## STILES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6942.

Circuit Court of Appeals, Fifth Circuit.

April 13, 1934.

Douglas D. Felix, of Miami, Fla., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and F. A. Surine, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency of income taxes amounting to $18,735.64 for the year 1925 against David Afremow. Afremow died on February 6, 1928. His widow qualified as executrix and petitioned the Board of Tax Appeals for a review of the Commissioner's determination. Later, she resigned, and D. C. Stiles, Jr., was substituted in her place. The Board redetermined the deficiency to be $3,250.65. We may refer to the opinion of the Board for the facts in detail. 25 B. T. A. 1246. Petitioner complains only of the rulings of the Board in respect of three transactions, which were as follows:

(1) On April 21, 1925, Afremow purchased four lots of ground in Dade county, Fla., for the price of $135,000, of which he paid $60,000 in cash and executed a first mortgage for $75,000. He sold the property on July 17, 1925, for $275,000, of which the purchaser paid $65,000 in cash, assumed the existing first mortgage of $75,000 and executed a second mortgage for $135,000, evidenced by four notes, in about equal amounts, payable in from one to four years, with 8 per cent. interest, payable semiannually.

(2) Afremow owned an undivided one-half interest in three lots in the same county, which property had been acquired in 1921, at a cost of $76,500, of which $36,500 was paid in cash and a first mortgage of $40,000 represented the balance. This property was sold in February, 1925, for $125,000, of which $35,000 was paid in cash, the first mortgage of $40,000 was assumed by the purchaser, and a second mortgage of $50,000 was executed, evidenced by ten notes of $5,000 each, of which two were respectively payable in one, two, three, four, and five years, with interest at 8 per cent., payable semiannually.

(3) Afremow owned an undivided one-half interest in another lot in the same county, which was acquired in 1921 at a cost of $10,000, of which $4,000 was paid in cash and a first mortgage for $6,000 was given. This property was sold in April, 1925, for $30,000, $10,000 in cash, the purchaser assuming the first mortgage of $6,000 and giving a second mortgage of $14,000, evidenced by six notes, of which two were respectively payable in one, two, and three years, with interest at 8 per cent. per annum.

In making his income tax returns for 1925, Afremow put down his interest in these second mortgage notes as being without fair market value, returned them as profits to be received in the future, and did not return any part of them as profit received in 1925. The Commissioner gave the second mortgage notes in the first transaction a fair market value of $33,250. The Board reduced this to $25,000, approximately 18½ per cent. of the face value. On the second transaction the Commissioner gave the one-half interest in the second mortgage notes a fair market value of $25,000. The Board reduced this to $5,000, 20 per cent. of the face value. On the third transaction the Commissioner gave the one-half interest in the second mortgage notes a fair market value of $2,333.33. The Board reduced this to $1,000, approximately 14.3 per cent. of the face value.

■ Petitioner assigns error to the above set out findings of the Board. It is conceded that the burden was on him to overcome the presumption in favor of the findings of the Commissioner, but it is contended that sufficient evidence had been introduced to overcome the presumption and that there was no evidence before the Board to support its findings of facts.

In support of his contention that the notes had no fair market value, petitioner relies upon the testimony of two witnesses, Crawford and Avant, who qualified as experts and gave their opinions to that effect. It is evident that the entire testimony of these witnesses is not brought up in the record, but only so much as refers to the three transactions above set out. In the findings and opinions of the Board, it appears that these same witnesses gave first mortgage notes on property in the vicinity a fair market value of 50 to 95 per cent., according to the property upon which the mortgages bore. It is also shown that the crest of the real estate boom in Florida was in July, 1925. The second mortgage notes represented practically all of the profit on the first and second transactions and more than two-thirds of it on the third. It may be assumed that some interest was paid on these notes as Afremow returned interest collected. It is not shown when the hearing was had before the Board, but the opinion was promulgated in April, 1932, approximately six years after the return was filed. It is not shown what had become of the real estate in the meantime, whether the purchasers were insolvent, whether interest had not been regularly paid on the second mortgage notes, or whether the first mortgages had been satisfied. It is not shown whether Afremow made any effort to sell the notes.

The Revenue Act of 1926, 44 Stat. 9, which governs, provides (section 202 (c), 26 USCA § 933 (c): "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

■ The 1921 Revenue Act (42 Stat. 230), § 202 (c), in the same connection uses the term "readily realizable market value." The change is significant. Under the 1926 act and subsequent acts a reasonable interpretation of the term "fair market value" is that it is equivalent to actual cash value. In other words, the value of the property in money to one who wishes to sell to a purchaser who wishes to buy. It is not necessary that market value be ascertained by quotations on an

exchange or that the property be readily salable in open market. The Board was entitled to consider all of the facts and circumstances pertaining to the case, and was not bound by evidence consisting merely of the opinions of experts. Ives Dairy v. Commissioner (C. C. A.) 65 F.(2d) 135. The presumption in favor of the Commissioner's determination was sufficient to support it, if not overcome by evidence. It was within the jurisdiction of the Board to determine whether there was sufficient evidence to rebut the presumption. Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277. Petitioner cannot complain of the action of the Board in reducing the amount of the deficiency as found by the Commissioner, regardless of whether it was supported by evidence. This would not be prejudicial error.

The petition is denied.