H. T. Cushman Manufacturing Company v. Commissioner.
H. T. Cushman Mfg. Co. v. Commissioner
Docket No. 734.
United States Tax Court
1943 Tax Ct. Memo LEXIS 60; 2 T.C.M. (CCH) 978; T.C.M. (RIA) 43475; November 8, 1943
*60 Payments by petitioner to an officer's widow, pursuant to a contract between petitioner and its officers authorizing such payments in the sum of $5,000 per annum, held, deductible under the provisions of section 19.23 (a)-9, Regulations 103, notwithstanding a provision in the contract that the amount of the payments in any year was to be reduced by the amount of dividends paid in that year upon stock of petitioner owned by the deceased officer on the date the contract was executed. Bennett Sanderson, Esq., and Benjamin B. Priest, Esq., for the petitioner. W. R. Murrin, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Petitioner challenges the respondent's determination of a deficiency in income tax for the year 1940 in the amount of $965.11 and claims an overpayment for that year of $92.99. Decision turns upon whether certain payments made in the taxable year to the widow of one of petitioner's former officer-stockholders are deductible as ordinary and necessary business expenses. Findings of Fact Petitioner is a Vermont corporation and filed its return on the accrual basis with the collector at Burlington, Vermont. In four installments from March *61 12, 1941 to December 12, 1941, which was within two years before the mailing of the notice of deficiency, petitioner paid an income tax for the year 1940 in the amount of $3,612.52. Petitioner has been engaged in the manufacture of furniture for many years. Its operations prior to the tax year were carried on by three brothers, John H. Cushman, W. C. H. Cushman and Frederick B. Cushman, who were its president, treasurer and secretary, respectively. Prior to 1930 the business prospered and the salary of each of the three officers was approximately $18,000 per year. Substantial losses were sustained in 1930, 1931 and 1932, aggregating about $270,000. The salary of each of the officers was $12,000 in 1930, $6,000 in the years 1931 and 1932 and $7,250 in 1933. Profits were realized in each of the years 1933 through 1942, except in 1938 and 1939, when small losses intervened. Each of the officers received a salary of $10,000 in 1934, $21,000 in 1935, $25,000 in 1936, $20,000 in 1937, $15,000 in 1938 and 1939, $18,000 in 1940 and $24,000 in 1941 and 1942. On August 15, 1933 petitioner's outstanding preferred and common stock was owned as follows: Preferred
Common
Name
shares
shares
John H. Cushman
265
611
W. C. H. Cushman
480
611
Frederick B. Cushman
550
527
Caroline C. Wellington
20
381
James B. Colgate & Co.
160
Burton L. Bromley
3
Total
1,475
2,133
*62 On or about August 15, 1933 petitioner, as party of the first part, and its officers John H. Cushman, W. C. H. Cushman and Frederick B. Cushman, as parties of the second part, entered into a contract entitled "WIDOWS' PENSION AGREEMENT." The agreement stated that petitioner was desirous of insuring the continued services of the three officers, and in recognition of past services, "which it feels have been inadequately compensated," and by reason of the covenants made therein by parties of the second part, petitioner agreed that upon the death of any of the parties of the second part during the term of 20 years from the date of the contract, leaving a widow surviving, petitioner would pay to the widow during her life and commencing with said death, but in no event exceeding a period of 25 years from the date of the contract, the annual sum of $5,000 in monthly installment. The parties of the second part covenanted to continue to devote their time and services to petitioner's interests for a period of ten years, for such compensation as should be fixed by petitioner, but in no event was such compensation to be fixed at less than the average annual compensation paid to the parties of *63 the second part over the period of the preceding three years. The agreement contained the following proviso: "* * * in the event that the dividend on any shares of common or preferred stock in said H. T. Cushman Manufacturing Company now held by any of said parties of the second part, shall equal or exceed the sum of five thousand dollars in any one or more of said years, then and in that event, during such year or years, no payments shall be made to the widow of such party by virtue of this agreement: and in the event that such dividends are declared and paid but do not equal the sum of five thousand dollars, then the payments to the widow of such party shall be diminished by the amount of such dividends for such year or years in which dividends are paid." The reason for this limitation of $5,000 was that the officers believed that such amount per annum would be sufficient for a widow's needs. The agreement was duly approved by the stockholders, ratified by the directors, and executed by petitioner through an agent duly appointed. On August 15, 1933 the ages of the officers of petitioner and of their wives were as follows: Officer's
Wife's
Officer
Age
Age
John H. Cushman
56
52
W. C. H. Cushman
52
50
Frederick B. Cushman
46
36
*64 Frederick B. Cushman, secretary of petitioner and a party to the above agreement, died on February 10, 1940. As a payment under the above agreement petitioner paid to his widow during the calendar year 1940 the sum of $4,583.33, being 11/12ths of $5,000. Petitioner paid no dividends on its preferred or common stock during the year 1940. In 1941 sufficient dividends were declared and paid by petitioner so that only $2,109.58 was paid to the widow under the above agreement. In 1942 and 1943 sufficient dividends were and have been declared and paid so that no payments under the above agreement were or will be made to the widow for said years. On its return for 1940 petitioner deducted the sum of $4,583.33 paid to the widow in that year. This deduction was disallowed by the Commissioner, who explained in the notice of deficiency that the contract under consideration was not a true pension arrangement within the meaning of section 19.23 (a)-9 of Regulations 103, interpreting section 23(a)(1) of the Internal Revenue Code, "payments thereunder being made contingent upon the amount of annual dividends paid upon the stock of the contracting parties owned as at the date of the agreement. *65 Therefore, it is considered that any payments made under such agreement are not pensions and are not allowable deductions against gross income." The sum of $5,000 per year is reasonable in amount for a pension to the widow of Frederick B. Cushman. The payments to her in the tax year, aggregating $4,583.33, were ordinary and necessary business expenses. Opinion ARUNDELL, Judge: The Commissioner in his brief requests an ultimate finding that the payments in question were not ordinary and necessary business expenses but were "a distribution in lieu of dividends." His position appears to be that payments to a widow are not deductible unless they constitute compensation for services rendered by the deceased officer during his lifetime and that payments do not fall in that category if they are contingent upon the amount of dividends declared and paid. The case principally relied upon is Astorian-Budget Publishing Co., 44 B.T.A. 969. We do not agree with the Commissioner. In our opinion the payments in question are clearly covered by the following sentence of section 19.23 (a)-9, Regulations 103: * * * When the amount of the salary of an officer or employee *66 is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * * The contract in question cannot reasonably be construed to represent an effort to distribute earnings in the form of a pension. It is entitled a pension agreement and provides for the payment of certain amounts to the widows of deceased officers as additional compensation for past and future services rendered by such officers during their lifetimes. The oral testimony at the trial confirmed this nature of the contract and dispelled any thought that a device was being fabricated to disguise dividend distributions. The agreement was executed at a time when the salaries of the three officers were only one-third what they had been. Counsel for respondent conceded that the time limit during which such payments might be paid was reasonable, as was the amount to be paid to each widow under the contract. He stated that the payments in controversy were questioned only because of the provision dealing with dividends. That provision, however, was simply to the effect that the pension would be reduced by the amount of dividends paid *67 on stock owned by the deceased officer at the time the contract was executed. It was explained that the officers were interested only in providing sufficient means to care for their widows; they considered $5,000 per annum to be enough for that purpose; and if that amount were received in any year as dividends they saw no need for paying the pension in that year. There was no requirement that the widow continue to own the stock in order to receive the pension, though it was apparently taken for granted that the stock in this closely held corporation would remain in the family group. We fail to understand why a pension should be regarded as something other than a pension if it takes into account the recipient's needs, that is, her income from other sources. In Astorian-Budget Publishing Co., supra, relied upon by respondent, the agreement between the officers of the taxpayer was that the amount of the salary of a deceased officer should be paid to his widow or next of kin so long as the widow or next of kin "continued to hold the inherited stock" of the taxpayer. We pointed out that the corporation itself was not a party to the agreement and furthermore *68 the only limitation of time on the payment was the period during which the widow continued to own the stock. "Such a provision," we said, "bears more earmarks of a special provision for the distribution of profits to an officer-stockholder than it does of a pension payment." Obviously there was no such provision in the case at bar. The provision here was merely a limitation upon petitioner's liability if the widow's needs were otherwise met and "in no way changed the character of the payment when made." Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198, 201. Accordingly, we hold that the deduction should have been allowed. Decision will be entered under Rule 50.