**KREY PACKING COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 9420(2).

United States District Court
E. D. Missouri, E. D.
Jan. 26, 1956.

Lowenhaupt, Waite, Chasnoff & Stolar, Abraham Lowenhaupt, Henry C. Lowenhaupt, Alfred O. Heitzmann, St. Louis, Mo., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Fred J. Neuland, Attys., Dept. of Justice, Washington, D. C., Harry Richards, U. S. Atty., Robert C. Tucker, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff sues to recover income and excess profit taxes, and interest thereon, assessed by the Commissioner of Internal Revenue and collected by way of a credit on other taxes assessed against plaintiff.

The facts are not in dispute. The issue presented on the first four counts of the complaint turns on the interpretation to be placed on certain sections of the Internal Revenue Code and Regulations made by the Treasury Department. During its fiscal years ending in 1944 and 1945 plaintiff suffered involuntary liquidations in certain group items of its meat stock. Previously plaintiff had

elected, with approval of the Commissioner, to keep its inventories upon the basis of the elective method authorized in Section 22(d) of the Internal Revenue Code of 1939, 26 U.S.C.A., called the Lifo [1] method. In 1946, 1947 and 1948 the items of involuntary liquidation were partially replaced. Plaintiff's net income otherwise determined for the years of involuntary liquidations is subject to adjustment to the extent of the difference between the cost of the meat items in making the replacement and the inventory cost of the base stock replaced.

It is plaintiff's position that the proper cost attributable to items of inventory purchased in 1946-7-8 in replacement of items involuntarily liquidated during the fiscal years 1944 and 1945 is represented by the actual cost of the items purchased in the last month of the fiscal year in the respective years of replacement.

Defendant contends the cost attributable to items of inventory purchased by the taxpayer in replacement of inventory items involuntarily liquidated during the years 1944 and 1945 is represented by the cost of such items first purchased in the order of acquisition in the respective years of replacement.

Plaintiff operates a slaughterhouse and processing plant in St. Louis, Missouri. Its principal products are derived from the slaughter of pork. It keeps its books and records and computes its income on the accrual basis of accounting, based, in the taxable years here pertinent, upon a fiscal year ending October 31.

Plaintiff filed its tax return for the fiscal year ending October 31, 1941, and attached Treasury Form 970, an application to use the Lifo method of valuing inventories of pork products, provided by Section 22(d) of the Code. The effect of this election was that plaintiff could thereafter value its inventory at the close of the taxable year in excess of the inventory at the beginning of the year, by reference to the actual cost of goods purchased or produced during the year in the order of acquisition. Prior to adopting the Lifo method plaintiff valued the inventories at cost or market value, whichever was the lower.

Subsequent to the 1945 fiscal year plaintiff elected to limit the Lifo method of valuing inventories to raw materials, including raw materials entering into goods in process and in finished goods, as authorized in Treasury Decision 5407. The inventory quantities were classified into four raw material groups, I, II, III and IV.

For the fiscal years 1944 and 1945 the plaintiff sustained involuntary liquidations of its inventories in each of groups I, II, III and IV. The inventory liquidation was:

|  | Fiscal year ended October 31, 1944 | Fiscal year ended October 31, 1945 |
|---|---|---|
| Group I | 159,893 pounds | 1,863,296 pounds |
| Group II | – 0 – | – 0 – " |
| Group III | 219,210 " | 191,691 " |
| Group IV | 372,730 " | 36,393 " |

These reductions in inventory were involuntary because after sales in the course of plaintiff's business the plaintiff could not replace or produce similar

---

1. Tax cases defining Lifo:

"The last in, first out formula assumes that the merchandise remaining in the inventory is that which was first purchased." Hutzler Bros. Co. v. Commissioner, 8 T.C. 14.

"The Lifo method makes the assumption that for a given year the latest purchases were the first sold and that the earlier purchases remained on hand at the end of the year, without regard to whether the actual physical content of the inventory conforms to the assumptions so made." Basse v. Commissioner, 10 T.C. 328.

goods due to war conditions then prevailing.

Replacement of the inventory in issue, involuntarily liquidated, was made during the fiscal years of 1946, 1947 and 1948.

Based upon the cost of items last purchased in the three years of replacement, the actual cost to plaintiff over the original inventory value of the goods involuntarily liquidated totaled $439,942.97; or $422,688.39 for the year 1946, $6,101.93 for the year 1947, and $11,152.65 for the year 1948. The excess cost plaintiff would attribute in replacement as follows: to the year 1944, $84,690.67; and to the year 1945, $355,252.30.

If the Court adopts plaintiff's position, the parties stipulate:

" * * * then plaintiff's income and excess profits tax liability for the years involved should be recomputed as provided by the applicable statutes giving proper credits for carry-backs and the like, and plaintiff would be entitled to any refund resulting from such computation, and the United States to any deficiency in tax for any other years resulting from such calculation, said deficiencies, if any, to be offset against any refund determined to be due, as aforesaid."

If defendant's position is adopted, it is stipulated that Counts I, II, III and IV should be dismissed, and as to Count V:

"With respect to the claim for interest set out in Count V of the Complaint, the amount of interest to which plaintiff is legally entitled is as set out in recomputation thereof made by the Internal Revenue service subject to verification thereof, which plaintiff agrees to accept."

While the complaint as to each count prays for a money judgment, in view of the stipulation we view this as a suit for a declaratory judgment also and proceed accordingly.

We find no prior Court ruling on the precise question at issue in this case.

It is agreed that if plaintiff is to recover, authority for such a holding must be found in Section 22 of the Internal Revenue Code of 1939.

Certain general rules of law bind this Court. "Always a taxpayer can be required to clearly establish his right to any income tax deduction." Heil Beauty Supplies v. Commissioner of Internal Revenue, 8 Cir., 1952, 199 F.2d 193, 196.

Plaintiff filed claims for refund for each of the years involved and they were officially disallowed by the Commissioner.

The plaintiff has "the burden of proof, which means, of course, that the decision of the Commissioner is prima facie evidence of its correctness." Union Electric Co. v. Commissioner of Internal Revenue, 8 Cir., 1949, 177 F.2d 269, 274.

We consider the various provisions of Section 22 relied on by the parties in light of the rule "that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on" plaintiff. Omaha National Bank v. Commissioner of Internal Revenue, 8 Cir., 1950, 183 F.2d 899, 902, 25 A.L.R.2d 628.

Plaintiff's argument that it is the cost of merchandise in the last month of the fiscal year that determines cost for replacement of the years of involuntary liquidation proceeds from the following fact summary and conclusion based thereon set out in its brief:

"*Goods reflecting an increase* did not exist at the beginning of the last month of the year of replacement. If at some time prior to the beginning of that month the inventory exceeded the opening inventory, it nevertheless declined below that opening inventory prior to the beginning of such last month. Any goods purchased, according to the language of the statute, are to be deemed in replacement of those most recently liquidated, whether or not involuntarily, so that until at some time within the last month of the fis-

cal year of replacement the inventory equaled the opening inventory of the year, the goods purchased were in replacement of the goods most recently liquidated, that is, sold during the year. Plaintiff therefore came to that point within that month with an inventory exactly equal to its opening inventory at the beginning of that year. All liquidations, whether voluntary or involuntary, within the year are thus washed out and only at that point does replacement of previous years' liquidations begin. It necessarily follows, then, as a matter of fact, that the goods last purchased in the fiscal year were those which reflected the increase of the closing inventory over the opening inventory, and the statutory requirement of 'order of acquisition' has been complied with fully."

We are unable to agree that Section 22(d) (6) authorizes the conclusion of plaintiff. Sub-section (C) of this section provides that if the closing inventory for a taxable year, subsequent to the year of loss by involuntary liquidation, reflects an increase over the opening inventory for such year, the goods reflecting the increase "shall be considered, in the order of their acquisition, as having been acquired in replacement of the goods most recently liquidated * * * and not previously replaced, and if the liquidation was an involuntary liquidation shall be taken into purchases and included in the closing inventory of the taxpayer for the year of replacement at the inventory cost basis of the goods replaced." We find nothing in this statute on which to base plaintiff's claims.

■■ We turn to Section 22(d) (1) (B). It dictates the method for valuing inventory in the circumstances at issue. There we find the rule stated:

"(1) A taxpayer may use the following method * * * in inventorying goods * * *

"(B) Treat those remaining on hand at the close of the taxable year

as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; * * *."

Plainly this statute must be held to mean that those items first purchased in the year are to be considered as those items last to be used or sold. Sub-section (C) above referred to confirms this view of the Act. Construing the sections together, they mean that in the year of replacement, partial or whole, subsequent to the year of involuntary reduction in inventory, the goods that are purchased first, or "in the order of their acquisition", are to be considered as those items which are to replace the inventory involuntarily liquidated in prior fiscal years, and they determine cost. Nothing is said, directly or by implication, that the taxpayer may wait until the end of the year, and if purchases in the last month reflect a higher cost, then the taxpayer may elect to use such cost in recovery of a tax reduction because of involuntary inventory reduction.

■ The plaintiff elected to and did use the Lifo method of valuing its inventory during the years of involuntary inventory reduction and by which the amount of involuntary liquidation was fixed. It was a hypothetical method of valuing inventory in a sense. But plaintiff sought the right and secured it for reasons which best served its financial interest. To now allow plaintiff to discard the use of the Lifo method in the replacement years would be an inconsistency the law does not favor, even if it be to plaintiff's financial tax benefit.

■ Plaintiff's position now is that the beginning and ending of months was to be the norm of determining inventories for the replacement years. We find no suggestion of such a method of tax determination procedure in the statute. Its use would be a departure from the usual yearly tax liability determination method. Before we would read such a practice into the statute we would have

**114**

to have authority of a higher Court because we consider it contrary to the present law on the subject. The term "replacement" as used in the Act means yearly replacement and not monthly replacement. The term "years" is repeatedly used in Section 22(d) (6) (C). Nowhere do we find the term "month."

■ Treasury Regulations 111, Section 29.22(d)–7, confirms this conclusion.

Plaintiff argues:

"* * * even if it be assumed that all acquisitions during the year remained on hand at the close of the year, the result would be the same, for the first acquisitions would be used to replace the latest liquidations, and only the last purchased goods would affect the increase."

It must be admitted this is not according to the Lifo method. The "replacement cost section" is part of the Act permitting the use of the Lifo method in valuing inventories. Impliedly the "replacement cost" section is available to only those taxpayers using the Lifo method in valuing inventories. Congress, by putting the "replacement cost" section in the statute permitting the use of the Lifo method, must have intended the principle of Lifo to be applied to the "replacement cost" section. The raw materials purchased first in the replacement year replace those materials involuntarily liquidated in a prior year.

Plaintiff's case is without support in the Act of Congress, and is contrary to Treasury Regulations. Plaintiff asked for and received permission to use the Lifo method of valuing its inventories by use of Treasury Form 970. Plaintiff represented it would determine cost of closing inventory "in the order of acquisition" of goods. No concern was manifested to value actual goods such as plaintiff now desires to do. In December, 1945, plaintiff limited the Lifo method to raw materials. Treasury Regulations were issued, as provided in Section 22(d) (3), which required the taxpayer in plaintiff's status to value excess inventory at the cost of goods purchased (or produced) in the order of acquisition, without concern to identity of specific goods. It is manifest in the regulation that the taxpayer must be consistent. Failure of the regulations (Treasury Regulations 111, Section 29.22(d)–2(4)) specifically to provide for valuing inventory at the close of a taxable year, in excess of inventory at beginning of the year and to ascertain replacement cost of inventory involuntarily liquidated on the Lifo method where taxpayer is operating under the Lifo method is overcome when it is seen that the Act and the regulation clearly require that replacement be valued in the order of their acquisition in the taxable year or by the Lifo method. The regulation contains the following provision:

"The goods reflected in any inventory increase in a year subsequent to a year of involuntary liquidation, to the extent that they constitute items of the kind and description liquidated in prior years, whether or not in a year of involuntary liquidation, shall be deemed, in the order of their acquisition, as having been acquired by the taxpayer in replacement of like goods most recently liquidated and not previously replaced. * * * To the extent that replacements are allocated to items involuntarily liquidated, however, the provisions of this section shall apply, both with respect to adjustments for the year of liquidation and other taxable years affected and with respect to inventory computations for the year of replacement and all subsequent taxable years."

In short, regardless of the ultimate purchase price of goods going into the inventory in the replacement year, the closing inventory cost figure of goods replaced shall be "in the order of their acquisition," as having been acquired by plaintiff in replacement of like goods most recently liquidated and not previously replaced, for the fiscal year.

Section 29.22(d)–1 of the Regulations required the plaintiff to treat inventory at end of its taxable years as ac-

quired in a certain order, "First, those included in the opening inventory of *the taxable year*, in the order of acquisition and to the extent thereof." (Emphasis added.) By the section of the Regulation which follows plaintiff having adopted the Lifo method is required—

"(4) Goods of the specific type on hand as of the close of *the taxable year* in excess of what were on hand as of the beginning of *the taxable year* shall be included in the closing inventory, *regardless of identification with specific invoices, at costs determined as follows:*" (Emphasis added.)

"Notwithstanding the ultimate purchase price or the cost of production ultimately incurred by the taxpayer in effecting replacement of a stock involuntarily liquidated, the merchandise reflecting the replacement shall be taken into purchases and included in the closing inventory for the year of replacement, and shall be included in the inventories of subsequent taxable years, at the inventory cost figure of the merchandise replaced."

■ As we read these Regulations, and as they bear on the circumstances of plaintiff because it had adopted the Lifo method for the year of involuntary liquidation, the stock showing the replacement, included in the closing inventory for the fiscal year of replacement, must be priced at the cost of the merchandise replaced in the order of acquisition during the year regardless of the ultimate cost of such stock acquired at the end of the year.

### Judgment.

This cause having been submitted on an agreed statement of facts and briefs having been filed and the Court being now fully advised in the premises, doth adjudge, decree and declare that under the law and the Regulations of the Treasury Department, the proper cost attributable to items of inventory purchased by plaintiff in replacement of Lifo inventory items involuntarily liquidated during the fiscal years 1944 and 1945, is represented by the cost of such items first purchased in the order of acquisition in the respective years of replacement, and the Commissioner's determination of tax status of plaintiff as set forth in Exhibit A attached to the complaint is correct; and

It is the further judgment of the Court that Counts I, II, III and IV are dismissed and the costs of this cause are taxed against plaintiff.

Judgment shall be held open for ten days for the parties to submit a supplemental judgment on Count V in accordance with the stipulation filed of record.